UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDRE DAMASIO FERREIRA,<br><br>Petitioner,<br><br>v.<br><br>JOSEPH D. MCDONALD, *et al.*,<br><br>Respondents. | No. 25-cv-11627-WGY |

**RESPONDENTS' OPPOSITION TO**
**PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 1)**

The Court should deny Petitioner Andre Damasio Ferreira's Petition for a Writ of Habeas Corpus. Primarily, Petitioner challenges his immigration detention and seeks immediate release from it. Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (June 4, 2025), Doc. No. 1, ¶¶ 1-2, 12-16, 24 ("Pet."). But Petitioner's detention is statutorily authorized and constitutional where, as here, United States Immigration and Customs Enforcement ("ICE") removed Petitioner from the United States in 2005 and he returned thereafter without inspection, admission, or parole. Ex. 1, Chan Decl. (June 12, 2025) ¶¶ 8-9 ("Chan Decl."). Moreover, Petitioner identifies no extraordinary circumstances that warrant this Court releasing him on bail. Pet. ¶¶ 21-22.

The Petition also fails for several reasons to the extent it seeks an order setting aside Respondent's purported "policy of transfer[ing] detained noncitizens to frustrate judicial proceedings." Pet. ¶ 6. For one, Petitioner does not offer evidence of such a policy beyond his own say so, let alone identify any final agency action as required to establish a claim under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 704. Nor does Petitioner have standing to challenge any purported policy because Petitioner admits that ICE has not transferred him.

*See* Pet. ¶¶ 12, 18-19. And, for similar reasons, Petitioner's challenge to the supposed policy is not ripe.

For these reasons, and those forth below, the Court should deny the petition.

## I.  BACKGROUND

### A.  Legal Background

An individual—like Petitioner—who has been removed from the United States pursuant to a final order of removal, and who thereafter re-enters the United States illegally, is subject to a statutory provision that allows immigration authorities to reinstate the original removal order and proceed with removal again. 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8; *Johnson v. Guzman Chavez,* 594 U.S. 523, 529-30 (2021). In *Guzman Chavez*, the Supreme Court held that the statutory authority to detain and remove an individual with a reinstated final order of removal is found within 8 U.S.C. § 1231. 594 U.S. at 533-34. Section 1231(a)(1)(A) directs immigration authorities to remove an individual with a final order of removal within a period of 90 days—this is known as the "removal period." During the removal period, § 1231(a)(2) commands that ICE "shall detain" the final-order alien.

If, however, the removal period has expired, ICE can either release an individual pursuant to an Order of Supervision as directed by § 1231(a)(3) or may continue detention under § 1231(a)(6). Per § 1231(a)(6), ICE may continue detention beyond the removal period for three categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;

- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or

- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

*See also Guzman Chavez*, 594 U.S. at 528-29.

In *Zadvydas v. Davis*, the Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period. 533 U.S. 678, 682 (2001). The Supreme Court "read an implicit limitation into the statute . . . in light of the Constitution's demands" and held that § 1231(a)(6), "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the individual does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

ICE has issued Post-Order Custody Regulations contained at 8 C.F.R. § 241.4 to set forth mechanisms concerning custody reviews, release from ICE custody, and revocation of release for individuals with final orders of removal. The regulations require ICE to conduct an initial custody review based on the individual's immigration record and any documents submitted prior to the end of the removal period—this is known as the 90-day custody review. *Id.* § 241.4(h). In deciding on custody, ICE is guided by factors that include ties to the United States, prior immigration violations and history, and the likelihood that the individual represents a flight risk or may abscond to avoid removal. *Id.* § 241.4(f).

If ICE maintains the individual in custody after the 90-day custody review, or after revocation of release, then further review of detention occurs three months later. *Id.* §§ 241.4(i), 241.4(l)(3). As part of the 180-day custody review, two ICE officers—a "Review Panel"—review the individual's immigration record, any information submitted by the individual, and

conduct a personal interview. *Id.* Following completion of the interview, the Review Panel issues a written recommendation as to the individual's custody status to an ICE official at ICE Headquarters. *Id.* § 241.4(i)(5). The ICE Headquarters official considers the custody recommendation and custody materials, and issues a custody determination. *Id.* § 241.4(i)(6).

If detention is still deemed appropriate, ICE will periodically conduct further reviews thereafter. *Id.* §§ 241.4(i)(3), 241.4(k)(1)-(2). Separately, the individual may present a written request that he should be released from detention because there is no significant likelihood he will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(d)(1). Upon receipt of a substantiated claim, ICE will analyze the likelihood of removal under the circumstances. *Id.* § 241.13(f). Specifically, an eligible individual "may submit a written request for release," together with "whatever documentation" he wishes "in support of the assertion that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* § 241.13(d)(1). ICE will then review the case and ultimately "issue a written decision based on the administrative record." *Id.* § 241.13(d)–(e), (g).

**B.    The Petition**

Petitioner alleges that he "is a resident of Massachusetts" currently detained at the Plymouth County Correctional Facility. Pet. ¶ 1. According to the Petition, on May 30, 2025, Petitioner was on his way to work in Revere, Massachusetts when ICE agents stopped the car in which he was a passenger. *Id*. ¶ 12. Petitioner alleges that agents asked him "questions about his immigration status" and then arrested him. *Id*. Petitioner further alleges that he "had no weapons and was engaged in no unlawful conduct, yet he was detained and questioned without any reasonable suspicion or probable cause of any illegality." *Id*. Petitioner also alleges that the

4

agents did not show a warrant for Petitioner's arrest or Mirandize him, nor did the agents explain why they were arresting Petitioner.  *Id*.

Petitioner asserts four claims alleging that (1) his detention is unlawful under the Fifth Amendment; (2) Respondents have "policy of moving detained noncitizens from facilities in their home states to frustrate judicial procedure," which violates the APA; (3) Petitioner is entitled to bail; and (4) Petitioner's arrest violated the Fourth Amendment.  *Id*. ¶¶ 14-24.  Petitioner asks the Court to order his immediate release from ICE detention and to set aside the purported policy of moving detained noncitizens to frustrate judicial review.  *Id*. at 6.

C.   **ICE Declaration**

"Petitioner is a native and citizen of Brazil."  Ex. 1, Chan Decl. ¶ 6 .  In December 2004, U.S. Customs and Border Protection ("CBP") "encountered the Petitioner in Laredo, Texas."  *Id*. ¶ 7.  CBP "determined Petitioner was present in the United States without a valid immigrant document and was present in the United States without inspection or admission by an immigration official."  *Id*.

Accordingly, CBP "processed Petitioner for expedited removal" and "ICE removed the Petitioner from the United States" on January 6, 2005.  *Id*. ¶¶ 7-8.  At some point thereafter, "Petitioner reentered the United States without inspection, admission or parole."  *Id*. ¶ 9.

On May 30, 2025, ICE was investigating a different individual and observed someone who looked like that individual entering a car.  *Id*. ¶ 10.  ICE then "conducted a vehicle stop" and found Petitioner, who "confirmed that he was from Brazil and he had illegally entered the United States."  *Id*.  "Officers further confirmed that the Petitioner was present in the United States unlawfully after being previously removed."  *Id*.

The officers then "arrested the Petitioner without a warrant, as they determined he was likely to abscond and processed him as a Reinstatement of Removal by serving him a Form I-871, Notice of Intent/Decision to Reinstate Prior Order." *Id*. ¶ 11.  Petitioner entered ICE custody the same day and is detained at the Plymouth County Correctional Facility under 8 U.S.C. § 1231.  *Id*. ¶¶ 5, 12.

## II. LEGAL STANDARD

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted).  Section 2241 of Title 28 of the United States Code provides district courts with jurisdiction to hear federal habeas petitions.  It is Petitioner's burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## III. ARGUMENT

### A. The Court Should Deny Petitioner's Claims of Unlawful Detention

#### 1. Petitioner is Properly Detained Pursuant to a Reinstated Removal Order

In his First Claim, Petitioner argues that his detention "is unjustified" and, therefore, violates the Fifth Amendment.  Pet. ¶ 15.  To the contrary, Petitioner's detention is permissible pursuant to 8 U.S.C. § 1231(a)(6).  *See Guzman Chavez,* 594 U.S. at 533-34.  Section 1231(a)(6) allows for continued detention beyond the removal period for the following categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;
- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or
- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal".

Petitioner falls within the scope of § 1231(a)(6) because he is inadmissible to the United States under at least two provisions of the 8 U.S.C. § 1182. First, § 1182(a)(6)(A)(i) applies to individuals, such as Petitioner, who are "present in the United States without being admitted or paroled." Second, § 1182(a)(9)(C) renders inadmissible individuals, such as Petitioner, who have been ordered removed from the United States, and who then re-enter without being admitted.

Moreover, the Supreme Court, in *Johnson v. Arteaga-Martinez*, squarely held that § 1231(a)(6) does not contemplate bond hearings for individuals covered by this provision. 596 U.S. 573, 580-81 (2022). The Supreme Court explained that Section 1231(a)(6)'s plain text "says nothing about bond hearings before immigration judges or burdens of proof" and therefore held no statutory requirement to conduct bond hearings existed. *Id.* at 581. As such, Petitioner cannot claim that he is statutorily entitled to release or a bond hearing.

### 2. Petitioner's Statutorily Authorized Detention is Constitutional

As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). The flight risk of aliens, such as Petitioner, with a final order of removal and a history of prior removal and illegal re-entry is self-evident because such individuals "have demonstrated a willingness to violate the terms of a removal order, and they therefore may be less likely to comply with the reinstated order." *Guzman Chavez*, 594 U.S. at 544.

7

Moreover, Petitioner's due process claim fails because post-removal detention for six months is "presumptively reasonable," *Zadvydas*, 533 U.S. at 701, and Petitioner has been in ICE custody only since May 30, 2025. Even if Petitioner were in detention beyond six months, he has not provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," as would be required for a viable due process claim. *See id*.

In fact, the First Circuit recently determined that an individual, detained for more than four years as he pursued withholding-only proceedings, could not make the initial showing to demonstrate his detention violated the *Zadvydas* framework because his "situation is readily distinguishable from *Zadvydas*." *G.P. v. Garland*, 103 F.4th 898, 901 (1st Cir. 2024). Unlike the two individuals in the *Zadvydas* case who faced potentially permanent detention because of being stateless, the First Circuit found that G.P.'s detention was finite because "if he is ultimately denied relief, the government will be able to move forward with removing him" from the United States. *Id.* at 902.

The First Circuit noted that G.P. was "unable to provide any decision where a court ordered a noncitizen to be released under *Zadvydas* while removal or withholding-only proceedings remained pending before the agency." *Id.* at 903. The First Circuit refused to adopt any of the arguments made by G.P. to reach a contrary result and instead joined several other circuits to hold that he had, despite being detained for four years and with resolution of proceedings nowhere near imminent, "failed to show that there is no significant likelihood of his removal in the reasonably foreseeable future." *Id.* at 902-03 (internal quotations omitted) (citing *Castaneda v. Perry*, 95 F.4th 750 (4th Cir. 2024) and *Martinez v. Larose*, 968 F.3d 555 (6th Cir. 2020)).

Accordingly, Petitioner's detention is statutorily authorized under 8 U.S.C. § 1231(a)(6) and constitutional under *Zavydas*. Thus, the Court should deny Petitioner's First Claim.

### 3. Petitioner is Not Entitled to Bail

Aside from claiming that Petitioner's detention is unconstitutional, the Petition also appears to assert (in its Third Claim) that Petitioner is entitled to bail pending adjudication of his removal proceedings. Pet. ¶¶ 21-22. But for reasons set forth throughout this memorandum, Petitioner has not "demonstrated a likelihood of success on the merits" of his habeas petition—or even "substantial claims" on the merits—for purposes of obtaining bail. *Savino v. Souza*, 453 F. Supp. 3d 441, 453, 454 n.11 (D. Mass. 2020) (citing *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972)).

Moreover, the Petition does not allege "extraordinary circumstances . . . that make the grant of bail necessary to make the habeas remedy effective." *Id*. (quoting *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001)). To the contrary, Petitioner alleges that he "fears his transfer to a detention facility outside of Massachusetts would prevent him from adequately litigating his removal and bond proceeding by limiting his access to counsel and evidence located" in Massachusetts. Pet. ¶ 21. But Petitioner offers no indication that his transfer to another district is imminent, nor does he explain how—or to what extent—his access to counsel and evidence would be "limit[ed]" if he were transferred from Massachusetts. *Cf. Avramenkov v. INS.*, 99 F. Supp. 2d 210, 214-15 (D. Conn. 2000) (holding that "a transfer, standing alone, does not constitute a violation of plaintiff's due process or statutory rights[,]" and rejecting a claim that any transfer would violate petitioner's rights where he "failed to provide evidence" that a transfer "would effectively destroy" his attorney-client relationship or preclude him from presenting evidence). In short, Petitioner offers no reason to think that bail is "necessary to make the

9

habeas remedy effective." *Compare Savino*, 453 F. Supp. 3d at 453 (finding "exceptional circumstances" warranted bail for certain habeas petitioners during the "nightmarish pandemic").

### 4. Petitioner's Fourth Amendment Claim Fails

In his Fourth Claim, Petitioner also raises a Fourth Amendment challenge to his arrest by ICE, arguing only that "Petitioner was detained and seized" in violation of the Fourth Amendment. Pet. ¶ 24. But "[s]tatues authorizing administrative arrest to achieve detention pending deportation proceedings have the sanction of time." *Abel v. United States,* 362 U.S. 217, 230 (1960); *see also Perez-Ramirez v. Norwood,* 322 F. Supp. 3d 1169, 1172 (D. Kan. 2018) (denying habeas petition and finding no Fourth Amendment violation because "the legality of an arrest of an alien based upon a civil immigration violation is well-established.").

Accordingly, district judges routinely deny habeas relief even where they assume that a Fourth Amendment violation occurred when ICE arrested a petitioner. *See e.g.*, *H.N. v. Warden, Stewart Det. Ctr.*, No. 21-cv-59, 2021 WL 4203232, at *5 (M.D. Ga. Sept. 15, 2021) (explaining that "even if the Court accepted Petitioner's argument that his initial detention was somehow unlawful, he is still not entitled to habeas relief."); *Jorge S. v. Sec'y of Homeland Sec.*, No. 18-cv-1842, at *4 (D. Minn. Nov. 15, 2018), *report and recommendation adopted*, No. 18-cv-1842, 2018 WL 6332507 (D. Minn. Dec. 4, 2018) ("Release from Jorge S.'s *current* detention because his detention *previously* had been unlawful would be a remedy ill-fitted to the specific injury alleged.") (emphasis in original); *Amezcua-Gonzalez v. Lobato*, No. C16-979, 2016 WL 6892934, at *2 (W.D. Wash. Oct. 6, 2016), *report and recommendation adopted*, 2016 WL 6892547 (W.D. Wash. Nov. 22, 2016) (finding that "even if petitioner's arrest amounts to an egregious Fourth Amendment violation, he is not entitled to habeas relief, and his petition should be denied.").

Instead, Petitioner may present his Fourth Amendment claim through a motion to suppress in Immigration Court, the Board of Immigration Appeals, and ultimately to a circuit court, but not to this Court. *See INS v. Lopez-Mendoza,* 468 U.S. 1032, 1050-51 (1984) (indicating that a motion to suppress may be available in immigration proceedings for "egregious violations of the Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained"); *see also Aguilar v. U.S. Immigr. & Customs Enf't Chi. Field Off.*, 346 F. Supp. 3d 1174, 1189 (N.D. Ill. 2018) (finding no Fourth Amendment violation where ICE detainee could challenge arrest before immigration court); *Arias v. Rogers*, 676 F.2d 1139, 1143 (7th Cir. 1982) (finding no constitutional infirmity in immigration arrest because detainees could "could avail themselves of the administrative remedies" available to them to contest detention.).

Thus, Petitioner may raise his Fourth Amendment claim to an immigration judge in a motion to suppress, or assert his claim in a suit for civil relief against the persons responsible for the allegedly unlawful arrest. *See, e.g.*, *Jorge S.,* 2018 WL 6332717, at *4. Habeas relief, however, is not a proper remedy even assuming a Fourth Amendment violation occurred.

**B.     The Court Should Deny Petitioner's Claim that a Purported ICE Policy Violates the APA**

Finally, the Court should deny Petitioner's Second Claim that Respondents have violated the APA with a purported "policy of moving detained noncitizens from facilities in their home states to frustrate judicial procedure[.]" Pet. ¶ 18. Petitioner claims that such "policy" is "arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction." *Id*. (citing 5 U.S.C. § 706(2)(A) – (C)). But Petitioner's claim is not appropriate for habeas relief because it does not pertain to whether he currently "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2241(c)(3). Regardless, Petitioner does not allege a final agency action, which dooms his APA claim. Moreover, Petitioner does not have standing to challenge the purported policy because he does not allege that ICE has transferred him outside Massachusetts, or that ICE has imminent plans to do so. And Petitioner's claim is not ripe in any event.

### 1. Section 2241 Relief Does Not Reach Petitioner's APA Claim

"The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal habeas corpus is a remedy available only to challenge the fact, duration, or legality of custody. *Fischer v. Napier*, 23-cv-11230-FDS, 2023 WL 8190787, at *2 (D. Mass. Nov. 27, 2023) (holding that "the district court lacks jurisdiction to grant relief" where "a § 2241 petition does not challenge the validity or duration of a prisoner's confinement") (collecting cases). Petitioner's claim that ICE has adopted an unlawful policy of transferring noncitizen detainees does not pertain to whether he is currently in ICE custody in violation of federal law, particularly where ICE has not transferred Petitioner.

### 2. Petitioner Fails to Identify a Final Agency Action

Even if Petitioner's habeas petition were a proper vehicle for his APA claim, Petitioner has not identified any actual policy of ICE regarding transferring noncitizen detainees to frustrate judicial review, let alone a policy that amounts to final agency action. *See* 5 U.S.C. § 704. "For an agency action to be reviewable under the APA, it must be 'final' action[.]" *Am. Assoc. of Univ. Profs. v. Rubio*, No. 25-cv-10685-WGY, 2025 WL 1235084, at *21 (D. Mass. Apr. 29, 2025). "To be final, agency action must be 'one by which rights and obligations have been determined' or from which 'legal consequences will flow.'" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Accordingly, "the action must mark the 'consummation' of the

agency's decisionmaking process," and the action "must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78 (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)).

Here, Petitioner alleges that ICE has a policy of transferring noncitizen detainees to frustrate judicial review, but points to no actual ICE policy on point. To be sure, "[a]gency action 'need not be in writing to be judicially reviewable as a final action[.]'" *Am. Assoc. of Univ. Profs.*, 2025 WL 1235084, at *21 (quoting *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 139 (D.D.C. 2018)). But Petitioner cites no evidence of the challenged policy beyond his own say so. Pet. ¶ 18; *compare Am. Assoc. of Univ. Professors*, 2025 WL 1235084, at *4-5, 21 (concluding that plaintiffs plausibly alleged that an "ideological-deportation policy" was a "final agency action" where plaintiffs "pointed to several examples of high-level agency officials at least arguably" following such a policy). Necessarily, therefore, the petition has not, and cannot, sufficiently allege that the challenged policy is "the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 177-78. Nor can the petition allege a policy "by which rights and obligations have been determined' or from which 'legal consequences will flow." *Assoc. of Univ. Professors*, 2025 WL 1235084, at *21. Plaintiff's APA claim fails for this reason alone.

### 3. Petitioner Lacks Standing to Assert His APA Claim

Moreover, Petitioner does not have standing to challenge the purported transfer policy because he admits that ICE has not transferred him to another state and does not allege that he is at imminent risk of transfer. Pet. ¶ 1 (alleging that Petitioner "is a resident of Massachusetts" and is detained in Massachusetts).

"As the Supreme Court recently explained, '[f]or a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a personal stake in the dispute[.]'" *Am. Assoc. of Univ. Professors*, 2025 WL 1235084, at *13 (quoting *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 379 (2024)). "In order to establish standing, plaintiffs must show[,]" among other things, "that they have suffered an 'injury in fact' that is 'concrete and particularized,' and, if based on future action, 'actual or imminent rather than conjectural or hypothetical[.]'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The Supreme Court has held that 'future injuries' may support standing 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Savino*, 453 F. Supp. 3d at 447 (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019)). Petitioner "must demonstrate standing for each claim" he asserts. *Id.* (quoting *Murthy v. Missouri*, 603 U.S. 43, 61 (2024)).

Petitioner fails to allege that his transfer is "certainly impending" or even that there is a "substantial risk" of it. *See generally* Pet. Instead, the most Petitioner alleges is that he "fears his transfer to a detention facility outside Massachusetts[.]" Pet. ¶ 22. Accordingly, Petitioner alleges only a "conjectural or hypothetical" injury insufficient for standing on his Second Claim.

### 4.     Petitioner's APA Claim is Not Ripe

Regardless, Petitioner's claim that ICE has an unlawful policy of transferring detainees to different states is not ripe because Petitioner does not allege that ICE has transferred him outside Massachusetts. *See generally* Pet. Article III of the Constitution limits the federal courts to deciding "Cases" and "Controversies." U.S. Const. art. III, § 2. To determine whether a petition presents a case or controversy, this Court must consider ripeness. *Reddy v. Foster*, 845 F.3d 493,

14

500-01 (1st Cir. 2017). "The 'ripeness' doctrine is applicable to actions brought pursuant to 28 U.S.C. § 2241." *Crooker v. Grondolsky*, 982 F. Supp. 2d 89, 92 n.2 (D. Mass. 2013). Petitioner "bear[s] the burden of alleging facts sufficient to demonstrate ripeness." *Reddy*, 845 F.3d at 501.

The "Supreme Court has reinforced that ripeness doctrine seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.*, 845 F.3d at 500 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "Cases that are 'largely hypothetical . . . are seldom fit for federal judicial review.'" *Worman v. Healey*, 293 F. Supp. 3d 251, 260 (D. Mass. 2018) (Young, J.) (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 538 (1st Cir. 1995)).

Petitioner's claim that ICE has an unlawful policy of transferring noncitizen detainees to frustrate judicial review poses just such a "hypothetical" claim. No "live case or controversy" exists because Petitioner does not allege that ICE has applied the supposed policy to Petitioner. *See Reddy*, 845 F.3d at 501-02 (holding that a claim was unripe where the complaint alleged only a "fear" of injury). And the Court cannot adjudicate the Petition based on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Reddy*, 845 F.3d at 500 (quoting *Texas*, 523 U.S. at 300); *see also Crooker v. Grondolsky*, 982 F. Supp. 2d 89, 91 (D. Mass. 2013) (concluding that petitioner's claim was not ripe because petitioner's claimed injury was only "one of potential").[1]

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny the petition (Doc. No. 1).

---

[1] Separately, Petitioner also claims that ICE's purported policy "violates the *Accardi* doctrine" but does not explain why. Pet. ¶ 18.

15

Dated: June 12, 2025								Respectfully submitted,

												LEAH B. FOLEY
												United States Attorney

									By:		*/s/ Julian N. Canzoneri*
												Julian N. Canzoneri
												Assistant U.S. Attorney
												U.S. Attorney's Office
												John Joseph Moakley U.S. Courthouse
												One Courthouse Way, Suite 9200
												Boston, Massachusetts 02210
												(617) 748-3170
												julian.canzoneri@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on June 12, 2025.

												*/s/ Julian N. Canzoneri*
												Julian N. Canzoneri
												Assistant U.S. Attorney